**E-FILED**
Thursday, 21 October, 2010 03:15:51 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Earl Edward Sydner,
    Plaintiff,

v.                                                                              09-1135

Willie Hedden, et al.,
    Defendants.

MEMORANDUM OPINION AND ORDER

Before the court is the Defendant, Willie Hedden's unopposed summary judgment motion [20].

Background

Plaintiff, Earl Sydner was an inmate in the custody of the Illinois Department of Corrections ("DOC") at Western Illinois Correctional Center ("Western"). Plaintiff filed his complaint on April 15, 2009, pursuant to 42 U.S.C. § 1983. Pursuant to the court's April 21, 2009 Merit Review Order, Plaintiff was allowed to proceed on a claim under the Eighth Amendment that Defendant Willie Hedden used excessive force against Plaintiff. Defendant seeks summary judgment in his favor. Defendant asserts that Plaintiff cannot provide sufficient evidence to proceed with this suit and he cannot show that his rights were violated under the Eighth Amendment, as required under § 1983. Defendant also asserts that he is entitled to qualified immunity.

Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by

"set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997)).

Undisputed Material Facts[1]

1. At the time relevant to his complaint, Plaintiff was housed in segregation at Western.
2. Defendant was an officer at Western who worked in the segregation wing. (Def"s Exhibit A, Deposition of Earl Sydner, p. 8.)
3. On August 22, 2008, the date of the alleged injury, Plaintiff had an altercation with an inmate worker. (Def's Ex. A, p. 10.) He threw a carton of water at the inmate through his food slot. (Def's Ex. A, p. 10.)
4. The food slot, also known as a chuckhole, is a box on the cell door that measures about 10 inches wide and 4 inches high, and is located parallel to the upper thigh of the Plaintiff. (Def's Ex. A, pp. 20-21.) This slot locks from the outside and the door swings down to open. ( Def's Ex. A, p. 22.) The outside edges of the slot are sharp. (Def's Ex. A, p. 21.) The chuckholes are normally kept shut, and are usually opened when the inmates are being fed, when trash is being picked up, or when the nurses are passing out medication. (Def's Ex. A, pp. 34-35.)
5. An officer told Plaintiff that he was being charged for attempting to assault an officer. (Def's Ex. A, p. 10.) A staff assault sign was placed on Plaintiff's cell. (Def's Ex. B,

---

[1]Exhibits can be found attached to Defendant's memorandum of law [21].

2

Offender Disciplinary Report dated August 22, 2008, p. 2.) Plaintiff did not receive the actual disciplinary ticket until the next day, August 23. (Def's Ex. A, p. 13.)

6. The disciplinary report recounted the details of the incident noted above and also included other charges, including the charge of "Intimidation or Threats." The report relates that the Plaintiff stated: "every time you officers open my food pass, I'm throwing piss on you." (Def's Ex. B, p. 2.)
7. He disagreed with his staff assault charge and stuck his right arm out of his food slot when it was opened again for med-line. (Def's Ex. A, p. 10.) He did this in order to "use [his] chuckhole as hostage" so that he would be given the chance to discuss the assault charge with a sergeant or lieutenant. (Def's Ex. A, p. 12.)
8. Plaintiff knew that he was not allowed to stick anything out of his chuckhole. (Def's Ex. A, p. 12.) He was also aware that he could have sent a request slip to speak with a higher-ranking officer, and that he would have the opportunity to speak about the charge at an Adjustment Committee hearing. (Def's Ex. A, p. 42.)
9. Defendant was assisting the nurse with medication when Plaintiff stuck his arm out. (Def's Ex. A, pp. 10-11.)
10. Plaintiff held his arm out of his chuckhole for about a half hour and no other officers came by while his arm was out. (Def's Ex. A, pp. 22-3.)
11. The Defendant waited until med-line ended to return to Plaintiff's cell. He told the Plaintiff to put his arm back into his cell, but Plaintiff refused. (Def's Ex. A, p. 11.)
12. The Defendant held Plaintiff's arm and guided it back into his cell. (Def's Ex. C, Incident Report dated August 22, 2008.)
13. The next day, on August 23, 2008, Plaintiff "took the chuckhole again." (Def's Ex. A, p. 13.) The TACT team came for the Plaintiff on that date. He described the entire process in his deposition: "I was trying to get over to see the doctor, and I took the chuckhole again. And they called the lieutenant, he gave me three direct orders, I told him no, I want to go to health care. And then about an hour later the TAC [sic] team came. And they video it. And they took me out of the cell, walked me backwards, strip searched me, the whole nine." (Def's Ex. A, p. 13.)
14. Plaintiff believes that protocol prevents regular officers from being able to physically handle inmates, and that protocol mandated that Defendant call a sergeant or lieutenant to deal with the Plaintiff. (Def's Ex. A, pp. 12-13, 34.) Then, if Plaintiff still refused to put his arm in, he believed that Defendant was supposed to call the TACT team. (Def's Ex. A, pp. 13, 34.) Plaintiff stated that he would have preferred for the TACT team to deal with him on August 22, 2008, than to have Defendant guide his arm back into his cell. (Def's Ex. A, p. 39.) However, he acknowledges that the TACT team officers may not always be ready to go, and that sometimes officers have to be called in from their homes to suit up. (Def's Ex. A, p. 38-39.)
15. An injury report was created by a nurse later that day at approximately 10:00 p.m. She noted that the right arm was mildly swollen, and she also noted minimal redness at the crook of the arm, with no bruising noted. The nurse acknowledged that she was examining Plaintiff almost five hours past the alleged incident, but wrote that the present findings were not consistent with that time line. (Def's Ex. D, Offender Injury Report, side 2.)

3

16. The same nurse came back and entered a nurse note at approximately 5:45 a.m. on August 23, 2008. Her notes indicate: swelling down, no bruising noted, and several scratches on right arm near elbow not present earlier. (Pl's Complaint, Ex.1-A.)

Discussion and Conclusion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Excessive force is force applied "maliciously and sadistically to cause harm," as opposed to force applied "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 5. Relevant factors include the need for force, the relationship between that need and the force applied, the threat reasonably perceived by the officers, the efforts made to temper the severity of the force employed, and the extent of the prisoner's injury. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *citing Hudson*, 503 U.S. at 7. "[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of force." DeWalt, 224 F.3d at 619; *see also* Outlaw v. Newkirk, 259 F.3d 833, 839 (7th Cir. 2001)(minor injury from guard shutting cuffport door on inmate's hand dismissed on summary judgment for guard). Significant injury is not required to state a claim, but its absence tends to support that only de minimis force was used. *Outlaw v. Newkirk*, 259 F.3d at 839 (7th Cir. 2001).

The protections of the Eighth Amendment provide restraints on the use of force against prisoners. To determine whether force can be considered unconstitutional, the main inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). A court must also consider the factors discussed in *Hudson* and affirmed in *Wilkins v. Gaddy*, 559 U.S. __ (2010) (per curiam)). Further, "[l]iability under § 1983 for cruel and unusual punishment does not attach to every actionable battery." *Lebron v. Wright*, 2005 WL 731058 (N.D.Ill. 2005); *see also Davis v. Lane*, 814 F.2d 397, 400 (7th Cir. 1987). *Lebron* points out that several district courts have considered whether the application of force used to try to remove an inmate's arm from a chuckhole constitutes cruel and unusual punishment in violation of the Constitution, and that a number of those courts have concluded that it does not. *Lebron*, at 4.

Thus, to survive a motion for summary judgment, the evidence must show a wantonness in the infliction of pain. *See Whitley v. Albers*, 475 U.S. 312 (1986). Here, the Defendant did not impose force for wanton or malicious purposes, but because there was valid concern for order and safety. Prior to the encounter between Defendant and Plaintiff, he had thrown a liquid substance out of his chuckhole, he had been charged with staff assault and with threatening to throw urine on the officers, and he had a staff assault sign posted on his door. Therefore, Defendant had reasonable safety and disciplinary concerns over the Plaintiff holding his chuckhole "hostage." The facts show that the use of force on Plaintiff was done in a good-faith effort to maintain or restore discipline and was not done maliciously or wantonly. Also, in applying the Hudson factors to the facts in this case, there can be no finding of unconstitutional force. As described in more detail above, Defendant reasonably perceived a threat of assault. He used only the force necessary to move Plaintiff's arm and shut the chuckhole to prevent any

further assaults. On the other hand, Plaintiff preferred the second approach, which would have required the entire TACT team to suit up and come to his cell. However, the fact that Plaintiff preferred one approach over the other does not mean Defendant used more force than was necessary or violated Plaintiff's rights.

Further, the nurse who saw Plaintiff within hours of the event noted that Plaintiff's right arm was mildly swollen with minimal redness and not consistent with Plaintiff's time line. While the medical records are unclear as to whether Plaintiff actually suffered any injury from the incident, the extent of the injuries noted in his medical records within 12 hours of the incident were minimal with only a small amount of swelling and some scratches.

Based on the foregoing, the court finds that the circumstances involved and the extent of the injury here cannot support a showing of a constitutional violation. As the court finds there is no constitutional violation, the court need not consider Defendant's assertion that he is entitled to qualified immunity. Defendant's summary judgment motion is granted.

It is ordered:

1. Defendants' summary judgment motion [20] is granted. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated, with the parties to bear their own costs. The parties are to bear their own costs. Any remaining pending motions are denied as moot.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 21st day of October 2010.


___s/Harold A. Baker____
Harold A. Baker
United States District Judge